# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:
)
) **JUDGE RICHARD L. SPEER**
Nevin/Caryl Liber )
) Case No. 08-37046
Debtor(s) )
)

## DECISION AND ORDER

This cause comes before the Court on the matter filed by the Trustee entitled "Motion to Set Hearing." (Doc. No. 78). In this Motion, the Trustee requests that this Court "determine priority to sale proceeds pursuant to previous order of the court." In this Court's previous Order, authority was given to the Trustee to sell the estate's interest in real property free and clear of liens, subject only to the Objection filed by the Central States Pension Fund who claimed, over the Trustee, a superior right and priority to the proceeds received from a sale of said real property. (Doc. No. 70).

On the matter of priority, both the Trustee and the Central States Pension Fund filed written arguments in support of their respective positions. The Court has now had the opportunity to review these arguments. Based upon this review, the Court, for the reasons set forth herein, finds that the Central States Pension Fund has, insofar as it concerns the Trustee, a superior right to the proceeds realized from a sale of the property.

## FACTS

On March 14, 1997, the Debtor, Nevin Liber, and his brother, Mark Liber, formed a business entity known as Nev-Mark Development, Ltd. (hereinafter referred to as "Nev-Mark"), each owning a 50% membership interest in the company. (Doc. No. 85, Ex. 2). At this time, the Debtor also owned a 100% interest in business operating under the name of Cherry Auto Parts (hereinafter

referred to as "Cherry Auto"). Both of these businesses were limited liability companies formed under Ohio law. (Doc. No. 84, Ex. C).

On September 17, 2008, the Debtor, acting on behalf of Cherry Auto, entered into an agreement to purchase his brother's 50% interest in Nev-Mark for the sum of $20,000.00. Under the terms of their agreement, the Debtor's brother would be paid the purchase price over a period of five years. A promissory note was executed to that effect, with the Debtor signing the note on behalf of Cherry Auto in his official capacity as president of the business. (Doc. 84, Ex. 10). To secure this transaction, the Debtor attached 13 shares of his stock of Cherry Auto to the promissory note. *Id.* However, for reasons unknown, the Debtor's brother never signed any document formerly transferring his interest in Nev-Mark to the Debtor. (Doc. 84, Ex. 13).

At the time of these transactions, Cherry Auto was making pension contributions to the Central States Pension Fund (hereinafter referred to as "Central States"). On September 27, 2008, however, Cherry Auto ceased making contributions to Central States, incurring a withdrawal liability of $367,895.45, as determined by the provisions of ERISA.[1] (Doc. 80, at pg. 2). Three months later, on December 31, 2008, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code.

In seeking bankruptcy relief, the Debtor made the following relevant disclosures: (1) a secured debt in the amount of $20,000.00 owed to his brother for the purchase of Nev-Mark; and (2) his ownership interest in the business entities of Nev-Mark and Cherry Auto. As well, the Debtor disclosed an interest in a single parcel of real property titled in the name of Nev-Mark. Pursuant to an order entered by the Court, the Trustee sold this property, receiving $17,500.00. It is the disposition of these proceeds which gives rise to the dispute between the Trustee and Central States.

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002.

In re Nevin and Caryl Liber
Case No. 08-37046

The Trustee, relying on the Debtor's ownership of Nev-Mark, claims that she has a superior interest in the proceeds received from a sale of the property. Central States, on the other hand, asserts a superior interest to the sale proceeds based upon a judgment it holds against Nev-Mark. The circumstances giving rise to this judgment are twofold.

First, after the Debtor filed for bankruptcy relief, Central States brought suit against Cherry Auto based upon the liability the business incurred as the result of its withdraw from the ERISA-qualified pension fund. This suit was brought in the United States District Court for the Northern District of Illinois, with a judgment thereafter being entered in the favor of Central States. Second, based upon this judgment entered against Cherry Auto, Central States then brought suit against Nev-Mark in the same forum, alleging liability because both Nev-Mark and Cherry Auto were under "common control." Although having notice of this proceeding, the Trustee did not appear or otherwise take any action to defend in this lawsuit. On September 15, 2010, a default judgment was entered against Nev-Mark in the amount of $451,953.01. (Doc. No. 84, Ex. 2).

## DISCUSSION

In the controversy now before Court, both the Trustee and Central States claim a superior interest in the proceeds received by the Trustee from the sale of property titled in the name Nev-Mark, a business entity in which the Debtor had a prepetition interest. The adjudication of this matter, as it requires a determination of the estate's interest in the property, is a core proceeding. Thus, this Court has been conferred with the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C.A. §§ 157(b)(2)(A)/(E)/(O); *see also Wagner v. Amwest Ins. Group, Inc. (In re Amwest Ins. Group, Inc.)*, 285 B.R. 447, 455 (Bankr. C.D.Cal. 2002) (determination of what constitutes property of the bankruptcy estate is akin to a turnover proceeding concerning the administration of the estate).

Page 3

In re Nevin and Caryl Liber
Case No. 08-37046

When a bankruptcy case is commenced, an estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). In a case such as this, filed under Chapter 7 of the Bankruptcy Code, a trustee is then appointed to administer the estate. *See* 11 U.S.C. § 323, § 701, and § 704. In administering a debtor's bankruptcy estate, a primary duty of the trustee is to marshal the assets of the estate for the benefit of the debtor's creditors. *Crestar Bank v. Neal (In re Kitchin Equipment Co. of Virginia, Inc.)*, 960 F.2d 1242, 1245 (4th Cir.1992).

The scope of estate property is broad and is intended to "bring anything of value that the debtors have into the estate." H.R.Rep. No. 595, 95th Cong., 1st Sess. 176 (1977), U.S.Code Cong. & Admin.News 1978, p. 6136. Given its broad scope, there is no disagreement that interests held by a debtor in a business entity, such as stock in a corporation or a membership interest in a limited liability company, become included in a debtor's bankruptcy estate. *In re Billingsley*, 338 B.R. 372 (Bankr. C.D.Ill. 2006). As a corollary, in a Chapter 7 case, where a debtor owns an interest in a business entity, the trustee is entitled to administer that interest – as well as any rights derived from that interest – in the stead of the debtor. *In re First Protection, Inc.*, 440 B.R. 821, 830 (9th Cir. B.A.P. 2010). For example, the trustee could vote a debtor's interest in shares of stock. *In re Reid*, 251 B.R. 512, 519 (Bankr.W.D.Mo.2000).

It is upon these precepts which the Trustee's based her authority to sell the real property owned by Nev-Mark. In her Motion for Sale, the Trustee stated:

> The property is owned by Nev-Mark Development Ltd, which is a real estate holding Company only. The Debtor, Nevin Liber is the sole member of the LLC. There is no mortgage on the real estate and there is no available exemption in the real estate.

(Doc. No. 58). In asserting a first priority to the sale proceeds of the Nev-Mark property, Central States, while not taking direct issue with these statements made by the Trustee, rests its position on

Page 4

this undisputed fact: It, and not the Trustee, is a creditor of Nev-Mark, a separate entity which is not before the Court. This position, as put forth by Central States, is well supported.

The scope of estate property, while very broad in its reach, is limited in a very important respect: In Bankruptcy Code § 541(a), it is specified that the estate is comprised of only a debtor's "interest" in property, not the actual property itself. This distinction is more than just academic. As previously explained by this Court:

> Section 541(a), by limiting the scope of estate property to just that of the debtor's "interest" in the property, does not expand or change the scope of the debtor's interest in the asset. Rather, § 541(a) merely places that "interest" in the bankruptcy estate. However, the estate's interest remains identical to and also limited to those interests held by the debtor when the petition was filed. Whatever rights a debtor had at the commencement of the case continue into bankruptcy-no more, no less.
>
> It necessarily follows then that the trustee, as a representative of the estate, takes a debtor's property subject to same restrictions that existed on the debtor as of the commencement of case. Similarly, the trustee is generally subject to any defenses which might have been asserted against the debtor but for the filing of the petition.

*French v. Johnson (In re Coomer)*, 375 B.R. 800, 804 (Bankr. N.D.Ohio 2007) (internal quotations and citations omitted).

A trustee's interest in a debtor's property, thus, does not ordinarily extend beyond those prepetition interests held by a debtor, a situation which has been described euphemistically as the trustee stepping into the shoes of the debtor. In this case, therefore, the Trustee, while stepping into the Debtor's shoes insofar as it concerns the Debtor's membership interest in Nev-Mark, takes that interest subject to any applicable legal limitations imposed on that interest. Such limitations exists as it concerns the Debtor's interest, and hence the Trustee's interest, in the business entity of Nev-Mark.

Page 5

In re Nevin and Caryl Liber
Case No. 08-37046

In the absence of a countervailing federal interest or specific bankruptcy provision to the contrary, limitations on a debtor's interest in property are created and defined by state law. *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 928 (6th Cir. 2000) ("unless a countervailing federal interest exists, state law determines whether a debtor has a property interest for purposes of § 541(a)(1)."), citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). For this purpose, Ohio law is applicable, with Nev-Mark being an Ohio limited liability company.

Under Ohio law, a person owning an interest in a limited liability company is denominated a "member." O.R.C. § 1705.01(G). A "member" is deemed to hold a "membership interest" in the company. *Id*. A "membership interest" entitles the member to a "share of the profits and losses of a limited liability company and the right to receive distributions from that company." O.R.C. § 1705.01(H).

A "membership interest" in a limited liability company is personal property. O.R.C. § 1705.17. A "membership interest" in a limited liability company, however, does not confer upon the "member" any specific interest in company property, whether personal property or real property. Such property is, instead, held and owed solely by the company. As set forth in O.R.C. § 1705.34:

> Real and personal property owned or purchased by a limited liability company shall be held and owned in the name of the company. Conveyance of that property shall be made in the name of the company.

Similarly, obligations of a limited liability company are specific to the company, with Ohio law providing: "The debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the limited liability company." O.R.C. § 1705.48(A). As a general rule, therefore, a "member" is not liable for any debt of a limited liability company solely by reason of that person being a "member" of the company.

Page 6

In re Nevin and Caryl Liber
Case No. 08-37046

O.R.C. § 1705.48(B). Furthermore, in the event of the dissolution of a limited liability company and the winding up of its affairs, the claims of creditors of the company must be satisfied first, before any assets of the company are paid to a member on account of their membership interest. O.R.C. § 1705.46.

Taken together, these facets of Ohio's law on limited liability companies lend themselves to this basic conclusion: A creditor holding a claim against a limited liability company may look to the assets of the company to satisfy its claim, and that claim must be satisfied in full before assets of the company are paid to its members or third parties asserting claims against a member of the company. The simply follows the corporate model. *See In re Richard Osterwalder*, 407 B.R. 291, 298 (Bankr. N.D.Ohio 2008) ( "It is . . . settled that, as against corporate assets, claims held by the corporation's creditors must be satisfied ahead of those of the corporation's shareholders.").

In this case, the property sold by the Trustee was titled solely in the name of Nev-Mark; as well, the claim asserted by Central States is solely against the business entity of Nev-Mark. Thus, the Trustee, having only succeeded to the Debtor's membership interest in Nev-Mark, has no specific interest in Nev-Mark's property. Instead, as put forth by Central States, because it, and not the Trustee, holds a claim Nev-Mark, it is entitled to have its claim satisfied from property held by Nev-Mark ahead of any interest claimed by the Trustee.

In opposition to this outcome, the Trustee attacks Central States' status as a creditor of Nev-Mark. In doing so, the Trustee takes the position that the withdraw liability imposed upon Nev-Mark was improperly assessed because it was based upon ERISA's "common control" doctrine which is only applicable if the Debtor owned more than 50% of Nev-Mark. According to the Trustee, the Debtor never reached this ownership threshold in Nev-Mark because, although it may have been

Page 7

In re Nevin and Caryl Liber
Case No. 08-37046

their intent, the Debtor's brother failed to effectively transfer his interest in Nev-Mark to the Debtor.[2] The following outlines the underlying legal basis for the Trustee's position.

Ordinarily, one company is not liable for another company's debts, even if there exists between the companies an identity of ownership. See *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 507, 895 N.E.2d 538, 539 (2008) (in order to disregard the corporate form, there must be a finding of "fraud, an illegal act or similarly unlawful act"). As a general matter, therefore, any debts incurred by Cherry Auto would not extend to Nev-Mark, notwithstanding that the Debtor held a major interest in both of these companies. For purposes of imposing liability under ERISA, however, companies which are found to be under "common control" are jointly and severally liable for one another's debts. 29 U.S.C. § 1301(b)(1).

In the type of situation presented here – involving brother-sister corporations, as opposed to a parent-subsidiary corporate structure – companies will be deemed to be under "common control" if (1) "five or fewer persons who are individuals, estates, or trusts" own a controlling interest (at least 80 percent of the stock) in two or more organizations and (2) the same persons maintain 'effective control' (more than 50 percent of the stock) over each organization." *Central States, Southeast and Southwest Areas Pension Fund v. SCOFBP, LLC*, 738 F.Supp.2d 840, 846 (N.D.Ill. 2010), *citing* 26 C.F.R. § 1.414(c)–2.

The Trustee's position attacks the second requirement, by averring that the Debtor never had "effective control" over Nev-Mark because, on account of his brother's failure to effectuate a transfer of his 50% ownership interest in Nev-Mark, the Debtor never owned *more than* 50% of the company. And, as an evidentiary matter, the Trustee's position may very well have merit. The only documentation before the Court directly evidencing a transfer of the brother's interest in Nev-Mark

---

[2] The Trustee pointed out that, after the Debtor filed for bankruptcy relief, she has received an assignment of the 50% interest held by the Debtor's brother in Nev-Mark.

Page 8

**In re Nevin and Caryl Liber**
Case No. 08-37046

to the Debtor is a purchase agreement. An agreement to purchase, however, will not ordinarily by itself effectuate a transfer of a person's interest in property. At the very least, this type of documentation should be coupled with other evidence of a transfer.

Notwithstanding, as a legal matter, the introduction of such evidence on the part of Central States is not necessary in this particular case. On September 15, 2010, a default judgment was entered against Nev-Mark by the United States District Court for the Northern District of Illinois in the amount of $451,953.01. This judgment is *res judicata*.

For purposes of federal law, applicable here since the judgment was entered by a federal court, the United States Supreme Court has described the doctrine of *res judicata* in these terms:

> when a final judgment has been entered on the merits of a case it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. The final judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.

*Nevada v. United States*, 463 U.S. 110, 129-30 103 S.Ct. 2906, 2918 (1983) (internal quotations and citations omitted). Consistent with this definition, liability against Nev-Mark could only be sustained if, for purposes of ERISA, it and Cherry Auto were determined to be under the "common control" of the Debtor. To be sure, with the judgment rendered against Nev-Mark being entered by default, the matter of the Debtor's ownership interest in Nev-Mark was not specifically determined by the district court.

However, a party seeking to obtain a default judgment must still establish the elements of a *prima facie* case with competent evidence. Thus, it is recognized that, in the absence of fraud, collusion, or lack of jurisdiction, a judgment obtained by default is no less binding in a subsequent

Page 9

In re Nevin and Caryl Liber
Case No. 08-37046

suit as a judgment entered after a determination on the merits of the complaint. 10A Fed. Prac. & Proc. Civ. § 2684 (3d ed.). In this matter, however, no grounds were raised warranting a finding that the judgment entered by the district court in Illinois was improper. Of particular note, the Trustee readily acknowledges that she had notice of the action proceeding in the district court in Illinois against Nev-Mark.

The Court, while it is sympathetic to the Trustee's position that the Debtor's estate did not have the financial resources available to defend a non-debtor party in an inconvenient forum, cannot simply set aside a judgment of a district court on this ground alone. Judgments entered by courts are presumed to be valid, and a party wishing to contest the validity of a judgment should either appeal the judgment or bring an action in the court rendering the judgment to have the judgment set aside. 46 Am. Jur. 2d Judgments § 32. For example, under Rule 55 of the Rules of Civil Procedure, the court rendering a judgment by default may set it aside for "good cause."

For all these reasons, the Court finds that Central States is entitled to the proceeds held by the Trustee on account of the sale of the real property owned by the Debtor's company, Nev-Mark. However, pursuant to 11 U.S.C. § 105(a), the Court finds that the Trustee shall be entitled to deduct, from those funds subject to turnover, the direct costs she incurred to effectuate a sale of said property. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 10

In re Nevin and Caryl Liber
Case No. 08-37046

Accordingly, it is

**ORDERED** that the Trustee, Ericka Parker, is directed to turnover to Central States Pension Fund those funds she received from the sale of the real property owned and titled in the name of Nev-Mark Development, Ltd. Pursuant to 11 U.S.C. § 105(a), the costs the Trustee incurred directly related to the sale of said property are not subject to this order of turnover, and may be retained by the Trustee.

Dated: May 18, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 11

# CERTIFICATE OF SERVICE

Copies were mailed this 18th day of May, 2012 to:


Benjamin Heywood
Lyden, Liebenthal & Chappell, Ltd.
5470 Main St
#300
Sylvania, OH 43560

Central States, Southeast and Southwest Areas Pension Fund
9377 W. Higgins Road
Rosemont, IL 60018

Erik G Chappell
Lyden, Liebenthal & Chappell
5470 Main Street
Suite 300
Sylvania, OH 43560


HUNTINGTON NATIONAL BANK
519 Madison Avenue
Toledo, OH 43604


Beth Ann Schenz
The Huntington National Bank
6101 West 130th Street, NE01
Parma, OH 44130

Scott D. Fink
Weltman, Weinberg & Reis Co., L.P.A.
323 W. Lakeside Avenue
Suite 200
Cleveland, OH 44113

John J Hunter, Jr.
1700 Canton Ave
Canton Sq
#1
Toledo, OH 43604

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131

Caryl S. Liber
7243 Saint Roberts Ln
Toledo, OH 43617-2219


Nevin A. Liber
7243 Saint Roberts Ln
Toledo, OH 43617-2219


Elliot H Feit
420 Madison Ave
1010 Ohio Bldg
Toledo, OH 43604

Ericka S Parker
232 10th Street
Toledo, OH 43604


    /s/Dawn Serna-Gensch
Deputy Clerk, U.S. Bankruptcy Court